UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES PATRICK DONOGHUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-0256 (RBW) |
| ) | |
| OFFICE OF INFORMATION POLICY, ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the Defendants' Motion for Partial Summary Judgment, ECF No. 9, and also the Defendants' Motion for Summary Judgment as to "New Jersey Document," ECF No. 22.[1] For the reasons discussed below, the motions will be granted.

I.  BACKGROUND

The Court construes the plaintiff's initial *pro se* filing, titled "Motion Under Vaughn [v.] Rosen to Require Detailed Indexing, Justification, and Itemization," ECF No. 1, as a civil complaint seeking relief under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552 (2012), with respect to his January 3, 2012 request for information (FOIPA Request No.

---

[1] Also before the Court is the Plaintiff's Motion for Summary Judgment, ECF No. 14.  Because the motion does not comply with Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h) in form and substance, it will be denied.

1

1180925-000) from the Federal Bureau of Investigation ("FBI"), a component of the United States Department of Justice.[2]  *See* Complaint ("Compl.") at 2.

According to the plaintiff, on or about August 19, 2008, he "was taken to the Baldwin County Courthouse in Bay Minette[,] Alabama for a docket hearing." *Id*. ¶ 1.  His defense counsel allegedly had been instructed to arrive at the courthouse at 6:00 a.m., and upon his attorney's arrival he "was taken into an office [where] two representatives of federal agencies placed a folder in front of him and told him . . . to read it, 'because they thought he should know who [his] client really is and what [h]is client really is.'" *Id*. ¶ 2.  Information in the folder purportedly pertained to investigations of the plaintiff's activities, some of which "were over 34 years old and dated back to when the [p]laintiff was only 17 years old." *Id*. ¶ 3.  The federal agents allegedly showed the file to the prosecutors and to the judge presiding over the plaintiff's criminal case, and secured their agreement to "use this information to insure that the [p]laintiff [would] receive[] the sentence that the two representatives had said he was to receive," that is, "two consecutive life sentences without parole." *Id*.  The federal agents allegedly threatened defense counsel in order to ensure his cooperation and to deter the plaintiff's resistance.  *See id*.  With the hope that counsel could persuade the judge to impose a 15-20 year sentence, the plaintiff contends that he "submitted a Blind Plea" and returned to court for sentencing in September 2008.  *Id*. ¶ 6.  The court allegedly "sentenced [the plaintiff] to . . . two consecutive life sentences, . . . two concurrent life sentences and . . . five concurrent 20 year sentences all

---

[2]  Because the plaintiff's complaint pertains to a single FOIA request submitted to the FBI on January 3, 2012, his attempts to amend the complaint or otherwise expand the scope of this action to include FOIA requests to the Drug Enforcement Administration, the United States Department of Homeland Security, or to the National Archives and Records Administration in October 2013, *see generally* Special Report in Opposition to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 18, and "Addendum to the Complaint and the Amended Complaint" and "Motion to Joint Parties Pursuant to Federal Rules of Civil Procedure 19(a)" attached thereto, are denied.  Production of records from those agencies must be pursued in a separate action, following requests for production of the records from those agencies.

without parole," notwithstanding the prosecutor's request that the court "sentence [him] only to . . . two consecutive life sentences[.]" *Id*. ¶ 7.  According to the plaintiff, "[t]he sentences . . . imposed . . . were directly due to the actions of these . . . two agents acting on instructions on behalf of these Federal Law enforcement and Investigative Agencies." *Id*. ¶ 8.

The plaintiff, who believes that the "composite file" presented to defense counsel, the prosecutors and the presiding judge contained "information . . . used to coerce [him] into pleading guilty" to the charges against him, Memorandum in Support of Defendants' Motion for Partial Summary Judgment, ECF No. 9 ("Defs.' Mem. I"), Declaration of David M. Hardy, ECF No. 9-1 ("Hardy Decl."), Exhibit ("Ex.") A (Letter to David M. Hardy from James Donoghue dated January 3, 2012) at 1, seeks the following information from the FBI:

> [C]opies of any and all sign out log sheets/records that show who signed out these files, the dates they were signed out, their destination, to whom these files were shown . . . upon their arrival in Baldwin County[,] Alabama, [and] when these same files were returned to their office of origin.
>
> The names of the individuals who requested the information in these files, the name and designation of authority of the individuals who authorized this action, and the reason why such action was undertaken.  Any and all documents that would show or purport to show the information requested that would be disclosed on what may be referred to as log sheets, any and all telephone logs in reference to this particular episode cited.  Any and all information stored in any electronic format reference to this particular episode including but not limited to E-mails and text and computer stored telephone records in regards to this episode cited.

*Id*. at 2.  The FBI acknowledged receipt of the request, which was assigned FOIPA Request No. 1180925-000, and instructed the plaintiff to supply additional information in order that a search of the FBI's Central Records System could be conducted.  *See generally id*., Ex. C (Letter to plaintiff from David M. Hardy dated January 26, 2012).  The plaintiff represents that he complied with the request.  *See id*. ¶ 7.

3

A search of the FBI's Central Records System "located no main files concerning [the] plaintiff," *id.*, Hardy Decl. ¶ 8, and the plaintiff was notified of this result in writing, *id.*, Ex. D (Letter to the plaintiff from David M. Hardy dated February 23, 2012).[3] The plaintiff pursued an administrative appeal of the FBI's initial determination to the United States Department of Justice's Office of Information Policy ("OIP"). *See id.*, Ex. E (Letter to Director, OIP, from plaintiff dated March 16, 2012). He maintained in his appeal that "active and/or inactive file(s) and documents(s) regarding [himself were] in the possession of the FBI and or Federal Law Enforcement Agenc[ies]." *Id.* at 1. He then requested "that an additional expanded search be conducted beyond the category of main file records." *Id.*

The OIP upheld the FBI's determination. *Id.*, Hardy Decl. ¶ 11; *see id.*, Ex. G (Letter to the plaintiff from Anne D. Work, Senior Counsel, Administrative Appeals Staff, Office of Information Policy, to the plaintiff dated August 23, 2012). With respect to the plaintiff's request for an additional search, the plaintiff was instructed to "provide information sufficient to enable the FBI to determine with certainty that any cross-references it locates are identifiable" to the plaintiff, the subject of the request, and to submit it directly to the FBI. *Id.*, Ex. G at 1-2.

The FBI subsequently determined that "it had accessioned a potentially responsive record to the National Archives and Records Administration," and advised the plaintiff to send a FOIA request directly to the Archives. *Id.*, Hardy Decl. ¶ 13. In addition, the FBI notified the plaintiff "that another potentially responsive record was stored at the closed file facility in New Jersey." *Id.* However, because the facility "sustained significant flood damages as a result of Hurricane

---

[3] In addition, the FBI advised the plaintiff that, pursuant to FOIA Exemption 7(E), its response neither confirmed nor denied the existence of his name on any watch list. Hardy Decl. ¶ 8. The plaintiff represents that he did not seek information as to the existence of his name on a watch list, *see, e.g.,* Pl.'s Opp'n at 2, or request information about investigative techniques or methods, *see id.* at 3, and the Court therefore will not address the FBI's reliance on Exemption 7(E).

Sandy," *id.*, there would be a delay in retrieving this record, *see id.*, Ex. H (Letter to the plaintiff from David M. Hardy dated May 1, 2013).  When FBI personnel eventually "conducted a review of this [record, they] determined that it is not identifiable to the plaintiff and therefore [the record is] not responsive to [the] plaintiff's [FOIA] request."  Memorandum in Support of Defendants' Motion for Summary Judgment as to "New Jersey Document," ("Defs.' Mem. II"), ECF No. 22, Status Declaration of David M. Hardy, ECF No. 22-1 ("Hardy Status Decl.") ¶ 6.

## II.  DISCUSSION

### A. Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Courts will grant summary judgment to an agency as the movant if it shows that there is no genuine dispute as to any material fact and if the agency is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "When, as here, an agency's search is questioned, the agency is entitled to summary judgment upon a showing, through declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, that it conducted a search likely to locate all responsive records." *Brestle v. Lappin*, 950 F. Supp. 2d 174, 179 (D.D.C. 2013) (citing *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

*B.  Search for Responsive Records*

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). "The Court applies a 'reasonableness' test to determine the 'adequacy' of search methodology, consistent with the congressional intent tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citations omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citing *Weisburg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.D.C. 1983)). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 127, and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

The FBI's Central Records System ("CRS") includes "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes," and "consists of a numerical sequence of files broken down according to subject matter." Defs.' Mem. I, Hardy Decl. ¶ 14. The subject matter of a CRS file "may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program)." *Id*. FBI Headquarters maintains certain CRS records, while each FBI field office maintains CRS records deemed

"pertinent" to that specific field office. *Id*. In order to search the CRS, "the FBI uses . . . the Automated Case Support System ('ACS')." *Id*.

FBI Headquarters and field offices access the CRS using alphabetically ordered General Indices. *Id*. ¶¶ 15-16. "The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices." *Id*. ¶ 15. There are two categories of General Indices:

> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – A "reference" entry, sometimes called a "cross reference," is generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

*Id*. "Searches made in the General Indices to locate records concerning a particular subject, such as James Patrick Donoghue, and all other known name variations for Mr. Donoghue, are made by searching the subject requested in the index." *Id*. ¶ 16.

Since 1995, FBI Headquarters, Field Offices and Legal Attaches use the ACS system, which "consolidate[s] portions of the CRS that were previously automated." *Id*. ¶ 17. "Because the CRS cannot electronically query the case files for data, such as an individual's name or [S]ocial [S]ecurity number, the required information is duplicated and moved to the ACS so that it can be searched." *Id*.

"ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases." *Id*. ¶ 18. The Investigative Case Management application "provides the ability to open, assign, and close investigative and administrative cases [and to] set, assign, and track leads." *Id*. ¶ 18(a). Each new case is assigned a Universal Case File Number, "which is utilized by all FBI field offices . .

7

. and FBI [Headquarters] . . . conducting or assisting in the investigation." *Id.* The Electronic Case File application "serves as the central electronic repository for the FBI's official text-based documents." *Id.* ¶ 18(b). The Universal Index application "provid[es] a complete subject/case index to all investigative and administrative cases." *Id.* ¶ 18(c). "Names of individuals or organizations are recorded with identifying . . . information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event." *Id*.

The Special Agent assigned to an investigation, or a Supervisory Special Agent at a field office, or a Supervisory Special Agent at FBI Headquarters determines whether "to index names other than subjects, suspects, and victims[.]" *Id*. ¶ 19. Only "that information considered to be pertinent, relevant, or essential for future retrieval" is indexed. *Id.* Without an index "to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved," and the FBI's files "would thus be merely archival in nature." *Id.* "[T]he General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, [it] may have in its CRS files on a particular subject matter," such as the plaintiff. *Id.*

The government's declarant explained that "[t]he FBI's policy is to search for[] and identify only the 'main' files responsive to [a FOIA] request[] at the initial administrative stage." *Id*. ¶ 20. Accordingly, FBI staff "conducted a manual search of its manual indices and an automated search of the CRS" using "variations of a phonetic breakdown of [the] plaintiff's first, middle and last name[s]," as well as the plaintiff's date of birth and Social Security number as search terms. *Id*. This search was intended "to locate any responsive main files at [FBI Headquarters] and all field offices." *Id*. The search yielded "no main files responsive to [the] plaintiff's request." *Id*.

Staff conducted "another manual and automated indices search of the CRS" in April 2013, for both "potentially responsive main files" and "for responsive cross-references at [FBI Headquarters] and at all field offices." *Id*. ¶ 21. Again, staff used variations of the plaintiff's name as search terms. *Id*. This search "located five potentially responsive cross-references." *Id*. Review of these cross-references indicated that three were not responsive to the plaintiff's FOIA request because none was identifiable to him. *Id*. ¶ 21(a). The FBI had "transferred one cross-reference to [the National Archives] on [or] about October 10, 2011," and advised the plaintiff that he could submit a FOIA request directly to the Archives. *Id*. ¶ 21(c). A fourth cross-reference had been stored at a closed file facility in New Jersey. *Id*. ¶ 21(b). FBI staff retrieved this file, and upon review, "determined that it is not identifiable to the plaintiff and therefore[] is not responsive to [his FOIA] request." Defs.' Mem. II, Hardy Status Decl. ¶ 6.

The plaintiff challenges the FBI's search on two grounds. He faults the FBI for its alleged "failure to give detailed justification for not searching NCIC, or other databases it may have owned or had access to." Pl.'s Opp'n at 6 (emphasis omitted); *see* Compl. ¶ 19. He posits that "it is not uncommon of an agency to conduct investigations in cooperation with other agenc[ies]," and that agencies "have access to the databases of other agenc[ies]," such that the FBI is obligated to expand its search beyond the CRS. Pl.'s Opp'n at 6.

The government's declarant describes the National Crime Information Center ("NCIC") as "a nationwide computerized information database operating under a shared management concept between the FBI and the criminal justice community, with the FBI functioning as the national manager." Defs.' Mem. I, Hardy Decl. ¶ 22. The FBI's Criminal Justice Information Services Division ("CJIS") manages the NCIC, and criminal justice information maintained therein is made "available via NCIC to virtually every law enforcement agency nationwide . . . ."

9

*Id*.  Among other information, NCIC's computerized database contains "person files," *id*., including "the Foreign Fugitive File, the Identity Theft File, . . . the Wanted Person File, and the Violent Gang and terrorist Organization File[,]" *id*. n.2.  The declarant explains that the NCIC is "a separate system of records from the CRS" and that "NCIC records are not accessed via a FOIA[] request."  *Id*. ¶ 22.  Rather, an individual must submit a request directly to the CJIS, and through the procedure set forth in 28 C.F.R. §§ 16.30-16.34, he may obtain his identification record, or what "is commonly known as a 'rap sheet.'"  *Id*.; *see* 28 C.F.R. § 16.31 (2012) (defining "[a]n FBI identification record, often referred to as a 'rap sheet'").

A valid FOIA request is one submitted in accordance with applicable regulations.  5 U.S.C. § 552(a)(3) (providing that an agency must make records promptly available upon any request "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed"); *see Hidalgo v. FBI*, 344 F.3d 1256, 1257 (D.C. Cir. 2003); *Lowe v. DEA*, No. 06-1133, 2007 WL 2104309, at *5 (D.D.C. July 22, 2007).  The plaintiff has not indicated that he submitted a request to CJIS, and the FBI was therefore under no obligation to search NCIC in response to his FOIA request.

The plaintiff's second challenge to the FBI's search presumes the existence of records pertaining to him.  According to the plaintiff, he "knows for a fact that there are records in the database of the F.B.I. and other related agencies regarding [an] incident . . . in . . . 1980," Pl.'s Opp'n at 9, when the plaintiff was interviewed by FBI Special Agents and a Coast Guard commander, *see generally id*., Affidavit of Testimony of Plaintiff ("Pl.'s Aff."), while aboard a merchant ship that had strayed into Cuban waters.  However, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C.

Cir. 2003) (citation omitted).  Even if the plaintiff had been "the subject of a tape recorded telephone conversation with the [FBI]" in connection with this 1980 incident, *id*., Pl.'s Aff. at 4, the plaintiff's speculation as to the existence of records concerning that conversation indexed to his name does not render the FBI's searches invalid, *see, e.g., Lardner v. FBI*, 875 F. Supp. 2d 49, 56 (D.D.C. 2012).  Thus, his unsupported speculation does not overcome the defendants' showing that its manual and automated searc5hes of the CRS using variations of the plaintiff's name as search terms were reasonably calculated to locate responsive records.

The plaintiff also contends that the FBI has failed "to address his claims pursuant to the [Privacy Act.]"  Pl.'s Opp'n at 8.  He asserts that he has a right to access FBI records pertaining to him and that he has a cause of action if the FBI makes an unauthorized disclosure of records pertaining to himself.  *See id*.  The plaintiff is correct that he has the right to acquire records maintained by the FBI pertaining to him.  *See* 5 U.S.C. § 552a(b).  But it is also true that a government agency may disclose records to another agency "for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought."  5 U.S.C. § 552a(b)(7); *see Doe v. DiGenova*, 779 F.2d 74, 85 (D.C. Cir. 1985).  These provisions, however, come into play only if the FBI maintains records about the plaintiff, and the FBI has demonstrated that there are no such records.

### III.  CONCLUSION

The FBI has demonstrated that it conducted an adequate search for information responsive to the plaintiff's FOIA request and that it maintains no responsive records.  It has therefore complied with its obligations under the FOIA.  Moreover, the plaintiff has failed to

establish a violation of the Privacy Act. Accordingly, the Court will grant the FBI's motions for summary judgment. An Order accompanies this Memorandum Opinion.

                                                          /s/
                                          REGGIE B. WALTON
                                          United States District Judge

DATE: January 27, 2016